**AXIS III:**    Chronic back pain

## DIAGNOSTIC IMPRESSION

Mr. Basham has a longstanding history of Attention Deficit Hyperactivity Disorder (ADHD) that has been diagnosed consistently since early childhood. He continues to display difficulty attending to tasks. Although he was able to focus on our five-hour evaluation, we had to take frequent breaks because he would be easily distracted. At times, he appeared not to pay attention to questions being asked and questions had to be repeated. He often avoids or is reluctant to engage in tasks that require sustained mental effort. This is also clearly evident in his appearances in the courtroom.

Additionally, from review of medical records and prior psychiatric testimony, it is clear that Mr. Basham's longstanding use of inhalants and other illicit substances appears to have led to some degree of cognitive decline. At age 8, before the onset of the use of inhalants, he was measured to have a full scale IQ of 100. By age 10, this had fallen to a full scale IQ of 88. By age 13, it had fallen to 77. By age 17, it had improved almost tem points (86). This may be due to the fact he was incarcerated and may not have had access to drugs. During pretrial evaluations he obtained full scale scores of 75 (Butner) and 68 (defense neuropsychologist, Dr. Brawley). I do not believe that this cognitive decline is happenstance. The decline combined with the soft neurological signs (nystagmus and persistent glabellar reflex) found by the defense neurologist is likely the result of longstanding use of illicit substances. However, I do not agree with the pretrial defense experts that he would meet the diagnostic criteria for dementia. This is because I do not find that these cognitive deficits "cause significant impairment in social or occupational functioning and represent a significant decline from his previous level of functioning"[1] from a clinical standpoint. However, I think they are noteworthy and because of such, I am assigning a diagnosis of Cognitive Disorder, Not Otherwise Specified.[2]

During this evaluation, Mr. Basham reported auditory hallucinations that were described in a manner that is not typical of a mental illness. Furthermore, his presentation of these symptoms was dramatic. They also have not been reported to prior forensic examiners. Mr. Basham appeared both coy and cagey when presenting his report of hallucinations. Additionally, when asked about hallucinations, he would suddenly begin acting as if he were hearing something. We also note from the medical records from the federal prison that he has engaged in similar behaviors there. For example, on May 15, 2007 a staff psychologist observed Mr. Basham to intermittently turn his head to the side, point and make abrupt verbal responses in the absence of an appropriate stimulus. This behavior was described as appearing intentionally exaggerated by the inmate, and Mr. Basham appeared to be suppressing a smile when he turned back to

---

[1] Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision. American Psychiatric Association. Washington D.C., 2000, p 170, Criterion B

[2] Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision. American Psychiatric Association. Washington D.C., 2000, p.179-180

13

JA 7422

face the psychologist. The psychologists have also noted no other signs of psychotic symptoms such as poor hygiene, cognitive defects, or disorganization in his thinking. For these reasons, I am assigning a diagnosis of Malingering of Psychotic Symptoms.

Because Mr. Basham has had disciplinary actions from making and using alcohol and he continues to engage in this behavior while incarcerated, it is our opinion that he would meet diagnostic criteria for Alcohol Abuse. According to records from the prison, in 2009 he was found with 12 plastic water bottles behind the locker that contained intoxicants.

Mr. Basham gives a longstanding history of heavy use of marijuana. He has been arrested numerous times for possession of marijuana. There has been an unsuccessful effort to cut down or control his cannabis use. He has also spent a great deal of time in activities necessary to obtain this substance. It is my opinion that he would meet diagnostic criteria for Cannabis Dependence. Because he doe not have access to marijuana currently, I am assigning the specifier *in a controlled environment*.

Mr. Basham reports a history of addiction to cocaine. He reports that he experienced tolerance to the effects of cocaine and needed increasingly larger amounts to obtain the same high. He also experienced significant cravings when he was unable to obtain this substance. It is our opinion that he would meet diagnostic criteria for Cocaine Dependence, in a controlled environment.

Because he has an early history of being diagnosed with learning disorders prior to his beginning use of illicit substances, I amnoting a diagnosis of Learning Disorder, Not Otherwise Specified, by history.

Finally, Mr. Basham meets diagnostic criteria for Antisocial Personality Disorder. He clearly demonstrates a pervasive pattern of disregard and violation of the rights of others that has occurred since before age 15. He has failed to conform to social norms as evidenced by his repeated performing of acts that are grounds for his arrest and incarceration. He has shown great manipulation skills and has been described as a con artist. He has obtained substances for his personal use that are considered contraband and illegal in the correctional setting. He has also traded medication to obtain canteen items. He was able to manipulate this examiner into bringing coinage in order to provide him snacks during the evaluation. On November 15, he asked me several times if I would bring quarters to the evaluation on the 16th. He also made sure that my escort told me that this was allowed. He further added that his lawyers buy him snacks. The first question he asked me when I walked into the interview room on the 16th was "Did you remember to bring the quarters?" He has also exhibited significant impulsivity, which is one hallmark of Antisocial Personality Disorder. He also has a chronic disrespect for authority figures and has engaged in assaults in the past on detention center officers and prison officers.

14

JA 7423

**OPINION REGARDING COMPETENCY TO PROCEED IN HIS MOTION FOR COLLATERAL RELIEF PURSUANT TO 28 U.S.C. § 2255:**

Mr. Basham has a basic understanding of the status of his case. He states, "My attorneys are trying to get me off of death row." He understands that if his attorneys were to be totally successful, he would still likely serve a life sentence, but would have the advantages of having contact visits with his family and other privileges which he does not have in the Special Housing Unit. He understands that his appeal, if successful, would result in a new trial. He alleges that chiropractic services are available in the general population, which is something he feels would be helpful for his back.

He states that Judge Anderson asked him if he wanted to drop his appeals or not. He states that the judge told him that he was not going to bargain with him. He reports significant frustration with the legal process related to his appeal. He added, "I want instant gratification – either kill me or not." He states that when Judge Anderson was trying to determine whether he was competent to waive his appeals, he told Judge Anderson that if he could have family contact visits, that he would be content with a life sentence. He believes that this was misinterpreted by Judge Anderson as him trying to bargain to have these things and yet waive his appeals.

He also is adamant that he would not want to waive his appeals if the judge would not set an execution date. He states that another inmate from who he seeks legal advice, David Hammer, has informed him that unless the judge signs a death warrant with an actual date on it that it is up to the US government to assign the date. Because (he alleges) the current president is opposed to the death penalty, the warrant would never be signed and Mr. Basham would be left in sort of a limbo (having waived his appeals but not being executed).

Regarding his behavioral outbursts in court, he states, "I sometimes want to leave – it doesn't matter what I do – it's not going to make a difference whether I am there or not. I just want to let the attorneys handle it." This is fueled by his frustration at the lengthy process his appeal is taking. He added, "They need to shit or get off the pot." When asked to explain this, he reports that he wants them to either give him a new trial or go ahead and execute him. He believes that the judge does not like him because of the severity of his crime. He also alleges that he does not believe that the judge will be fair in his case.

Mr. Basham certainly understands his legal situation and sums it up with the phrase, "I turned a 90-day sentence into a goddamn death sentence." He reports he specifically does not like to sit in the court hearings when he has to hear "all the crappy stuff that happened to me as a kid." He added that he lived through this and does not really want to listen to testimony about it.

He was able to name the first names of his current public defenders, Sarah and Mike, and added that he understands that they are from Arizona. He reports an okay working relationship with his current attorneys, but adds, "They tell me I'm like a kid." He is

15

JA 7424

adamant by stating that he does not believe the court or anyone can make him sit in hearings. He added that he was going to be dying anyway, so what did he have to lose if he wants to leave. When asked appropriate behavior for court, he reports, "In a proper respectful way." He understands the role of the judge and the US Attorney in his current situation. He may not understand all of the legal maneuvering related to his appeal. He reports dissatisfaction with the performance of his trial attorneys and feels that they did not do an adequate job. He added that he wished he would have been able to retain his initial attorneys, Cam Littlejohn and William Moncton. He also reported he believes that his conviction should be overturned because of misbehavior on the part of the jury foreperson. Apparently, this was an issue on his direct appeal. During the course of my interview, he was able to give specific examples of things that had happened at his initial trial that makes him have an unfavorable view of the performance of his trial attorneys. He would be able to relate this information to his current appellate attorneys as well.

Mr. Basham is likely a very difficult inmate to defend or to assist with an appeal. This is largely because he has very little ability to delay gratification and has difficulty sustaining attention at times when he finds a subject matter uninteresting. However, I find no evidence that Mr. Basham does not have a sufficient understanding of his current appeal, the potential outcome if the appeal is successful, the role of the court officers, or the importance of behaving appropriately in court. Furthermore, it is my opinion that he has a rational ability to consult with his attorney should he choose to do so. Therefore, it is my opinion that he remains competent at the present time to participate in his motion for collateral relief.

## OPINION REGARDING COMPETENCY TO BE EXECUTED:

Mr. Basham understands that he has received a death sentence along with his codefendant for kidnapping a woman from a Wal-Mart parking lot in Conway, South Carolina and subsequently killing her. He states, "I know where I am – I know why I'm here – I know I did something wrong." He does not know the method of execution and stated, "I hope they will let me choose." When I told him I did not believe that was possible, he states, "I hope it's fast." He stated to this examiner that he was remorseful for the things that he had done. He was able to communicate with me for four hours with short breaks. It is my opinion that he would be capable of rationally consulting with his attorneys on information related to his appellate process if he so chooses. Mr. Basham does not have a delusion regarding the finality of death or the reason that he is being punished. He also understands the effect the potential dropping of his appeals would have on his family. From his conversations with this examiner, it would appear at this point that Mr. Basham does not want to waive his appeals. He is clearly able to state that if there is a possibility that he could be in general population where he is allowed to have contact visits and, according to him, receive additional medical care for his back pain, he would want to do so. This would be inconsistent with a full desire to drop his appeals. However, he frequently gets frustrated with the slowness of the legal process of his appeal and at times, in his frustration, he is likely to tell the court to go ahead and execute him.

16

JA 7425

**OPINION REGARDING COMPETENCE TO STAND TRIAL AT THE TIME OF HIS INITIAL TRIAL IN 2004:**

*Retrospective competency determinations are inherently less reliable than competency evaluations performed at the time of trial.* However, I have reviewed portions of the trial transcript where there were questions about Mr. Basham's competency and have evaluated his current knowledge base of the legal system. I have also reviewed testimony given by attorneys in this current motion for collateral relief.

Competency to stand trial is defined as whether Mr. Basham has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.

Mr. Basham has demonstrated an ability to respond to disciplinary proceedings at the USP. He has listed witnesses he wishes to call in response to accusations against him. He has called for the assistance of staff counsel for these proceedings. Through written statements he has responded appropriately in a rational manner to allegations that he had contraband. (See response on June 17, 2007 to allegations that he possessed tobacco). Even if he did not file these on his own, they demonstrate that he has an ability to utilize others to assist him in filing them. This would provide some evidence that he has sufficient present ability to consult with his lawyer.

Mr. Basham is aware that he was convicted of taking a car resulting in death and also a gun charge. In regards to his trial, he reports that he tried to ignore large portions of it. He certainly understands the role of his defense attorney in representing him in court and trying to get a good outcome for him. He recalls that his first two attorneys, Cam Littlejohn and Billy Moncton, were disqualified from representing him. He recalls the name of his other two lawyers, Jack Swerling and Greg Harris. He reports that he did not feel they did a very good job representing him. He reports that they told the judge that they were afraid of him. He also reports that the one time he wanted them to do something at trial, they ignored him. He added, "No wonder I like to sleep so much." He reports that another member of the defense team, Paige Tarr, did a better job of explaining things to him in court so that he could understand.

He understands the role of the US District Attorney and stated the US District Attorney "wants to get me to be killed." He understands that the District Attorney would want him to be found guilty. He recalls that the judge makes decisions in the courtroom and that the jury consists of people who sit and watch the trial. He remembers talking to his attorneys about picking the jury in his case, but reported, "I really didn't care." He recalls that the jury foreman had stated that she did not think he would do well in prison and that he would be violent. He was able to state and define the pleas of *guilty* and *not guilty*. He understands the basic concepts that are involved in plea-bargaining. He understands that the jury decides the verdict, but did not realize that the verdict had to be unanimous. He was able to understand this information when it was explained to him. He states that he thought the majority had to approve the verdict, or seven out of the 12.

17

JA 7426

According to the trial transcript, there are several mentions of Mr. Basham apparently dozing during his trial. One such occasion occurred during the redirect testimony of Gray Ervin. Mr. Basham was asked about this by the court and reported that he was exhausted and tired and didn't feel like he could take this anymore. He reported feeling tired of coming to court. He added later, "I don't want to be here." He stated he did not feel he could take the stress of the trial. When informed that he needed to be able to confer with his attorneys, he reported, "They don't confer. I don't confer. I don't care. I am ready to plead guilty and sign the death warrant. I am tired of this. You know what I am saying? If I could sign the death warrant right now, give me death." He also added that he could not take the stress. The court decided to take a break at that point and noted on the record that Mr. Basham appeared to be doing much better in terms of staying awake and alert following the break.

Mr. Basham has demonstrated trial related abilities of consulting with his lawyer and understanding proceedings. This is evident during discussion of his dissatisfaction with his trial attorneys. He reports that during the sentencing phase an officer from the jail, specifically a lieutenant, said Mr. Basham was the worst inmate he had seen in 27 years. He further states that this statement stemmed from an incident at the jail involving his food slot being left open. He reports that his treating psychiatrist, Dr. Morgan, had written an order for the food slot to be left open because Mr. Basham was claustrophobic (not his word). He reports that the lieutenant closed the flap, despite Dr. Morgan's order, and Mr. Basham popped it back open. He reports that another officer with the last name McMillan stated the lieutenant and other officers were looking for a reason to come into his cell and take him down, and that he (Basham) had just given them one. He reports he told Officer McMillan to stay out of the way so that he would not get hurt. Subsequently, when the lieutenant provided testimony at trial, he tried to get his attorneys to call Officer McMillan to testify about what actually happened. He reports that his attorney, Mr. Harris, shushed him. He states that he told his attorneys if they did that again he would "slam them out of the goddamn chair." He added, "The one time I wanted them to do something, they ignored me – no wonder I like to sleep so much." This report by Mr. Basham demonstrates several trial-related abilities. First, it indicates that he appreciates the significance of harmful potential testimony about his adaptation to prison life. Secondly, it demonstrates his understanding of how such negative testimony could be challenged with a rebuttal witness. Finally, it also demonstrates his ability to inform his attorneys when he believes someone is testifying untruthfully and the importance of doing so.

There was an incident during his trial when Mr. Basham assaulted federal marshals who were escorting him into court and out of court. This occurred after the judge made a decision not to allow Mr. Basham to use dip during the trial. At that point, Mr. Basham asked to leave the court room and the judge refused to let him leave. Mr. Basham became upset when a United States Marshal grabbed his arm and a tussle ensued. He became very angry at the judge for refusing his request to have dip and reported, "You will never get me back in this courtroom again." At that point, the defense psychiatrist, Dr. Donna Schwartz-Watts, was called to evaluate Mr. Basham and a break was taken until the next day because she had concerns about his competency. The next morning,

18

he was reevaluated by Dr. Schwartz-Watts and was opined to be competent and the trial continued.

Disruptions caused by a defendant in court, while undesirable, are not always indicative of incompetency. In reviewing the trial transcript, I see no evidence that Mr. Basham was psychotic (out of contact with reality) or not capable of understanding what was going on in his surroundings. Quite frankly, he appears to have been very upset at both the federal marshals and the judge at that point and did not want to remain in the courtroom. Mr. Basham has a longstanding history of not liking to be controlled by others which has been a lifelong pattern. This is a manifestation of his underlying personality pathology and not necessarily mental illness or brain pathology. I find his behavior as contained in the record consistent with his personality pathology.

I have also reviewed testimony provided by his trial attorneys during this motion's hearing in October of 2012. Both Jack Swerling and Gregory Harris testified that they did not have concerns about Mr. Basham's competency to stand trial. The defense retained psychiatrist, Donna Schwartz-Watts, M.D., likewise did not believe that competency to stand trial would be an issue in this case. Mr. Basham clearly has prior legal experience, and was familiar with being in court previously. When there were appropriate concerns about potential competency issues, the court apparently took a recess and allowed Mr. Basham to be reevaluated during trial, consistent with the opinion outlined in *Drope vs. Missouri 420 U.S. 162, 95 S.Ct. 896* .

With the limitations of a retrospective examination of competency to stand trial, after reviewing the excerpts of the trial transcript, Mr. Basham's current understanding about the legal system, Mr. Basham's reflections on aspects of his trial, and testimony of his trial attorneys during hearings on this motion for collateral relief, I find insufficient evidence to suggest that Mr. Basham would not have been competent to stand trial at the time of his trial.


Respectfully submitted,

*Richard L. Prierson, MD*

Richard L. Prierson, MD, DFAPA
Professor of Clinical Psychiatry and Vice Chair of Education
Department of Neuropsychiatry and Behavioral Science
University of South Carolina School of Medicine

RLF/dmc-6842

D&T: 11/26/12

JA 7428

# RICHARD LESESNE FRIERSON, M.D.

Department of Neuropsychiatry and Behavioral Science
University of South Carolina School of Medicine
3555 Harden Street Extension, Suite 301
Columbia, S.C. 29203
(803) 434-2808
(803) 434-2985 (fax)
richard.frierson@uscmed.sc.edu

## EDUCATION

1984      B.M. (Music), University of South Carolina, Columbia, S.C., *magna cum laude*

1988      M.D., University of South Carolina School of Medicine, Columbia, S.C., *cum laude*

## POST GRADUATE TRAINING

1988-1992      Residency in General Psychiatry, University of South Carolina / William S. Hall Psychiatric Institute, Columbia, S.C.

1992-93      Fellowship in Forensic Psychiatry, University of South Carolina School of Medicine/ William S. Hall Psychiatric Institute, Columbia, S.C.

## ACADEMIC APPOINTMENTS

2012-      **Professor and Vice Chair for Education**
Department of Neuropsychiatry and Behavioral Science
University of South Carolina School of Medicine
Columbia, S.C.

Oversees all medical student education, residency training programs, and fellowship training programs

Program Director, Forensic Psychiatry Fellowship: Coordinate all forensic psychiatry training for the medical school, general psychiatry residency, and forensic psychiatry fellowship including didactic seminars and clinical experiences

Development of intradepartmental and interdepartmental initiatives

JA 7429

Director, University of South Carolina Professional Wellness Program

**2007-**    **Professor of Clinical Psychiatry**
Department of Neuropsychiatry and Behavioral Science
University of South Carolina School of Medicine
Columbia, S.C.

Program Director, Forensic Psychiatry Fellowship:  Coordinate all forensic psychiatry training for the medical school, general psychiatry residency, and forensic psychiatry fellowship including didactic seminars and clinical experiences

Director, University of South Carolina Professional Wellness Program

Director, Forensic Psychiatry Consultation Service

Develop case material for the National College of District Attorneys at the National Advocacy Center and oversee the provision of expert psychiatric testimony for the National College of District Attorneys and the United States Department of Justice at the National Advocacy Center

Consultant to South Carolina Department of Corrections, Gilliam Psychiatric Hospital

Chair, Appointments, Promotions and Reappointments Committee

**2001-2007**    **Associate Professor of Clinical Psychiatry**
Department of Neuropsychiatry and Behavioral Science
University of South Carolina School of Medicine
Columbia, S.C.

Coordinate all forensic psychiatry training for the medical school, general psychiatry residency, and forensic psychiatry fellowship (fellowship training director), including didactic seminars and clinical experiences

Director, Forensic Psychiatry Consultation Service

Develop case material for the National College of District Attorneys at the National Advocacy Center

Oversee the provision of expert psychiatric testimony for the National College of District Attorneys and the United States Department of Justice at the National Advocacy Center

**1999-**    **Director, Forensic Psychiatry Fellowship**
University of South Carolina School of Medicine

JA 7430

Directs and Supervises PGY-5 residents in forensic psychiatry and oversees curriculum, accreditation, and recruitment in forensic psychiatry fellowship

Oversees all forensic psychiatry training for General Psychiatry Residency

**2003-**  **Adjunct Associate Professor**
Department of Psychiatry and Behavioral Sciences
Medical University of South Carolina (MUSC)
Charleston, S.C.

Direct elective rotation in forensic psychiatry for general psychiatry residents and provide lecture(s) in the forensic psychiatry seminar for general psychiatry residents; supervise forensic fellows at mock trial exercises held at the National Advocacy Center in Columbia

**1994-2001**  **Assistant Professor of Clinical Psychiatry**
University of South Carolina Department of Neuropsychiatry and Behavioral Science / William S. Hall Psychiatric Institute

Course Director, Outpatient Forensic Psychiatry, Fourth Year Medical Student Elective Rotation

Director, General Topics in Forensic Psychiatry Lecture Series, Forensic Psychiatry Fellowship (1995-96)

Director, The Psychiatrist in Court Lecture Series, Forensic Psychiatry Fellowship (1997-present)

Caseload Supervisor, General Psychiatry Residency Training Program

Clinical Supervisor for Outpatient Forensic Evaluations, Forensic Psychiatry Fellowship

**1993-94**  **Instructor in Psychiatry**
University of South Carolina
Department of Neuropsychiatry and Behavioral Science/William S. Hall Psychiatric Institute

Lecturer, "Introduction to Forensic Psychiatry", Lecture Series for Third Year Medical Student Psychiatric Clerkship

Case Load Supervisor, General Psychiatric Residency Training Program

Member of Residency Training Committee and Examiner for Annual Oral

JA 7431

Examinations, General Psychiatry Residency Training Program

**1991-92**    **Chief Resident in Psychiatry**
University of South Carolina
Department of Neuropsychiatry and Behavioral Science

Clinical Tutor for Third Year Medical Students

Course Director, Psychopharmacology in Clinical Practice,
General Psychiatry Residency Training Program

Coordinator of Emergency Psychiatry Consultation Service, Richland
Memorial Hospital

Director of Chief Resident's Grand Rounds Seminar

Group Leader of Psychopathology Course for Third Year Medical
Students

## CLINICAL APPOINTMENTS

**2003-**    **University Specialty Clinics**
Private practice of general and forensic psychiatry

Supervision of General Psychiatry Residents and Forensic Psychiatry
Fellows in the provision of services

Consultant, S.C. Board of Medical Examiners

**2003-**    **Psychiatric Medical Staff Member, Palmetto Health Alliance**
Consulting Courtesy Privileges

Provide forensic consultation – risk assessments, competency
determinations, etc.

**2003-**    **Staff Psychiatrist**
Gilliam Psychiatric Hospital, South Carolina Department of Corrections

Psychopharmacology consultant for patients hospitalized for psychiatric
treatment within the Department of Corrections

**1999-2003**  **Director, Forensic Psychiatry Education**
South Carolina Department of Mental Health: Division of Education,
Training, and Research

**JA 7432**

Responsible for all educational activities within the Forensic Division of the South Carolina Department of Mental Health, including education of third and fourth year medical students, general psychiatry residents, and forensic psychiatry fellows.

1995-99 **Chief of Outpatient Forensic Services**
William S. Hall Psychiatric Institute

Supervised Outpatient Forensic Service including two other psychiatrists and coordinated scheduling of outpatient forensic evaluations

Member, Credentials Committee

Physician Consultant, Ethics Committee

1993-95 **Teaching Psychiatrist**
William S. Hall Psychiatric Institute

Conducted outpatient forensic examinations on defendants and provided court testimony

Treated privately insured patients on Shearouse Unit

Member, Pharmacy and Therapeutics Committee and Quality Care Review Board

## OTHER PROFESSIONAL APPOINTMENTS

2006 **Invited Faculty, National Habeas Institute**
National Institute of Trial Advocacy
Atlanta, GA

2001- **Faculty, National College of District Attorneys**
National Advocacy Center
Columbia, S.C. and Arlington VA

2007 **Member, Task Force on the Development of a Curriculum for the Training in the Prosecution of Elder Abuse**
National College of District Attorneys
Columbia, S.C.

## BOARD CERTIFICATIONS AND ACTIVITIES

1994 Diplomate, **Psychiatry**, American Board of Psychiatry and Neurology,

JA 7433

January 1994, Certificate No. 38807

| | |
|---|---|
| 1994 | Diplomate, **Forensic Psychiatry**, American Board of Psychiatry and Neurology, October 1994, Certificate No. 77 |
| 2002 | Recertified, **Forensic Psychiatry**, November 2002-December 31, 2014 |
| 1999- | Examiner, Part II Oral Examinations in Psychiatry, American Board of Psychiatry and Neurology (30 Examinations) |
| 2000-2008 | Member, Committee on Examination in the Subspecialty of Forensic Psychiatry, American Board of Psychiatry and Neurology |
| 2008- | Member, Committee on Recertification Examination in Psychiatry, American Board of Psychiatry and Neurology |
| 2012- | Ambassador, American Board of Psychiatry and Neurology Maintenance of Certification Program |

## FORENSIC EXPERIENCE

| | |
|---|---|
| 2012- | Subject Matter Expert, Threat Management Services, Law Enforcement and Safety, University of South Carolina |
| 2011 | Qualified as Expert in Forensic Psychiatry in Superior Court of Monmouth County, New Jersey |
| 2006 | Invited expert for mock trials, National Habeas Institute, Atlanta, GA. |
| 2002- | Consultant in Medical Malpractice cases, including standard of care, damages, and issues related to informed consent |
| 2002- | Consultant in Forensic Psychiatry, United States Air Force, 20th Fighter Wing, Office of Staff Judge Advocate |
| 2002- | Faculty, numerous national courses for the National College of District Attorneys |
| 2001- | Forensic Consultant and Evaluator of Impaired Physicians for the South Carolina Board of Medical Examiners |
| 2001- | Qualified as an Expert in Forensic Psychiatry in U.S. District Court |
| 1998- | Invited expert for mock trials, United States Department of Justice at the National Advocacy Center |

**JA 7434**

1998-     Invited expert for mock trials, National College of District Attorneys at the National Advocacy Center

1994-     Consultant in evaluations to determine competency to withdraw death penalty appeals

1994-     Conducted competency to proceed in Post Conviction Relief (PCR) evaluations and provided testimony at PCR hearings

1994-     Conducted psychiatric disability evaluations and Independent Medical Examinations (fitness for duty) for private industry

1994-     Conducted competency evaluations for conservator and guardian appointments for Probate Courts in Richland and Sumter Counties

1994      Conducted psychiatric evaluations for the Federal Department of Probation

1994      Conducted pre-sentencing psychiatric evaluations for United States District Court

1992-     Provided psychiatric testimony in over 250 trials in Circuit Courts and Family Courts throughout South Carolina

1992-     Completed over 2000 court ordered Competency to Stand Trial and Criminal Responsibility evaluations of criminal defendants from throughout South Carolina

## OTHER PROFESSIONAL ACTIVITIES

| | |
|---|---|
| 2012 - | Secretary, American Academy of Psychiatry and the Law |
| 2012 – 2015 | Editorial Board, Journal of the American Academy of Psychiatry and the Law |
| 2011 - | Vice-President, Association of Directors of Forensic Psychiatry Fellowships (ADFPF) |
| 2011 - 2013 | Conflict of Interest Committee, American Psychiatric Association |
| 2011 - | Co-Chair, Education Committee, American Academy of Psychiatry and the Law |
| 2010 - | Isaac Ray Award Committee, American Psychiatric Association |
| 2009 - 2012 | Executive Councilor, American Academy of Psychiatry and the Law |
| 2009 - 2011 | Nominating Committee, American Academy of Psychiatry |

**JA 7435**

| | |
|---|---|
| | and the Law |
| 2008 – 2010 | S.C. Representative to the Assembly of the American Psychiatric Association |
| 2008 - | Member, Education Committee, American Academy of Psychiatry and the Law |
| 2008 - | Reviewer, *Journal of Forensic Sciences* |
| 2007 – 2008 | President, South Carolina Psychiatric Association |
| 2006 – 2007 | President-Elect and APA Deputy Representative to the Assembly, South Carolina Psychiatric Association |
| 2005 – 2006 | Vice President, South Carolina Psychiatric Association |
| 2005- | Reviewer, *Journal of Psychiatric Practice* |
| 2004- | Reviewer, *Psychosomatic Medicine* |
| 2004- | Reviewer, *Psychiatric Services* |
| 2004 | Chair, ADFPF Task force on Autonomy and ADFPF relationship with AAPL |
| 2003 – 2005 | Secretary/Treasurer, South Carolina Psychiatric Association |
| 2002- | Task Force for the Development of Practice Guidelines for Competency to Stand Trial Evaluations, American Academy of Psychiatry and the Law |
| 2002- | Program Committee, American Academy of Psychiatry and the Law |
| 2000- | Reviewer, *Journal of the American Academy of Psychiatry and the Law* |
| 1999- | Member, Association of Directors of Forensic Psychiatry Fellowships |
| 1999 – 2001 | Ethics Committee, American Academy of Psychiatry and the Law |
| 1995 – 1996 | President, Midlands Chapter of the South Carolina Psychiatric Association |
| 1994 – 1995 | Secretary, Midlands Chapter of the South Carolina Psychiatric Association |

## HONORS / AWARDS

### University of South Carolina School of Music

| | |
|---|---|
| 1984 | Magna Cum Laude Graduate |
| 1984 | Valedictorian, School of Music |
| 1984 | Pi Kappa Lambda |
| 1984 | Phi Beta Kappa |
| 1984 | Theodore Presser Scholar - Outstanding Senior Music Major Award |
| 1980-84 | Music Scholarship |
| 1980-84 | Alumni Scholarship |

**JA 7436**

## University of South Carolina School of Medicine

| | |
|---|---|
| 1988 | Cum Laude Graduate |
| 1988 | Lange Medical Series Award |
| 1988 | Joseph Collins Foundation Scholar (New York, N.Y.) |
| 1986-88 | Todd Memorial Foundation Scholarship |
| 1984-88 | William B. Douglas Medical Scholarship |

## University of South Carolina, Psychiatric Residency

| | |
|---|---|
| 1992 | Outstanding Psychiatric Resident Award |
| 1990 | Joe E. Freed Award in Research, Outstanding Resident Paper, William S. Hall Psychiatric Institute |

## Post Graduate Career Awards

| | |
|---|---|
| 2011 | Distinguished Visiting Professor (DVP), Wilford Hall Medical Center, Lackland Air Force Base, San Antonio, Texas, February 1-4, 2011 |
| 2011-2012 | Best Doctors in America® selection |
| 2010-2011 | Best Doctors in America® selection |
| 2009-2010 | Best Doctors in America® selection |
| 2009 | Stephen L. Von Riesen Lecturer of Merit Award, presented June 3, 2009, National College of District Attorneys |
| 2007-2008 | Best Doctors in America® selection |
| 2007 | Distinguished Fellow, American Psychiatric Association |
| 2006 | Recipient of the Annual Award for Most Outstanding Teacher in a Forensic Psychiatry Fellowship, American Academy of Psychiatry and the Law, Chicago, Illinois, October 27, 2006 |
| 2006 | Distinguished Visiting Professor (DVP), Wilford Hall Medical Center, Lackland Air Force Base, San Antonio, Texas, May 8-11, 2006 |
| 2005-06 | Teacher of the Year Nominee, General Psychiatry Residency Program, University of South Carolina |
| 2004 | Distinguished Fellow, American Psychiatric Association |
| 2003-04 | Teacher of the Year Award, General Psychiatry Residency Program, University of South Carolina |
| 2002-03 | Teacher of the Year Nominee, General Psychiatry Residency Program, University of South Carolina |
| 2003 | Alpha Omega Alpha – faculty inductee, University of South Carolina School of Medicine |
| 2002 | Fellow, American Psychiatric Association |
| 2002 | Distinguished Visiting Professor (DVP), Wilford Hall Medical Center, Lackland Air Force Base, San Antonio, Texas, February 5-7, 2002 |

JA 7437

## PUBLICATIONS

**Frierson RL:** Combat Related Posttraumatic Stress Disorder and Criminal Responsibility Determinations in the Post-Iraq Era: A Review and Case Report, *Journal of the American Academy of Psychiatry and the Law,* accepted for publication, in press

**Frierson RL**: Chapter 14: Legal Issues and Forensic Psychiatry, in *National Medical Series: Psychiatry, 6th edition,* Thornhill, JT ed. Lippincott, Williams and Wilkins: Media, PA, 2011

Ferlauto MJ and **Frierson RL**: Involuntary Civil Commitment in South Carolina and the Probate Judge: A Survey, *Journal of the American Academy of Psychiatry and the Law,* 39:209–16, 2011

Law KB and **Frierson RL:** Legal Digest: Constitutionality of the Federal Sex-Offender Law, *Journal of the American Academy of Psychiatry and the Law,* 2010, 38:615-617

Buckland JJ and **Frierson RL**: Legal Digest: Constitutionality of the Federal Sex-Offender Commitment Law, *Journal of the American Academy of Psychiatry and the Law,* 2009, 37:556-8

**Frierson RL** and Campbell NN:  Commentary:  Core Competencies and the Training of Psychiatric Residents in Therapeutic Risk Management, *Journal of the American Academy of Psychiatry and the Law,* 2009, 37:165-167.

Freeman B and **Frierson RL**: Legal Digest: Court Mandated Long-Acting Antipsychotic Medication as a Condition of Supervised Release, *Journal of the American Academy of Psychiatry and the Law,* 2009, 37:268-70

Morris DR and **Frierson RL**: *Pro Se* Competence in the Aftermath of *Indiana v. Edwards, Journal of the American Academy of Psychiatry and the Law,* 2008, 36:551-7

**Frierson RL** and Jacoby KA: Legal Aspects of Dementia, in *Dementias – Vol. 89 in Handbook of Clinical Neurology, 3rd edition,* Litvan I and Duyckaerts C, Eds. Elsevier Publishing, London, 2008

Mossman D, Noffsinger SG, Ash P, **Frierson RL**, Gerbasi J, Lewis CF, Pinals DA, Scott CL, Sieg K, and Wall B: Practice Guideline: Forensic Psychiatric Evaluation of Competence to Stand Trial, *Journal of the American Academy of Psychiatry and the Law,* 2007, 35(4Supp.)

JA 7438

**Frierson RL**, Dwyer, RG, Bell CC, Williamson JL:  The Mandatory Registration of Juvenile Sex Offenders and Commitment of Juveniles as Sexually Violent Predators: Controversies and Recommendations.  *Adolescent Psychiatry: The Annals of the American Society for Adolescent Psychiatry*, 2007, 30:55-62

Dwyer, RG, Bell CC, **Frierson RL**, Williamson JL:  Use of Assessment Data for Research in Juvenile Justice: An Exploratory Study of Sex Offenders. *Adolescent Psychiatry: The Annals of the American Society for Adolescent Psychiatry*, 2007, 30:63-68

Williamson JL, Bell CC, Dwyer RG, **Frierson RL**: Toward a Better Juvenile Justice System: A City-State Partnership.  *Adolescent Psychiatry: The Annals of the American Society for Adolescent Psychiatry*, 2007, 30:47-53

**Frierson RL.** The Suicidal Patient:  Risk Assessment, Management, and Documentation.  *Psychiatric Times*, April 2007, 24 (5):29-32

Freeman B, Buckland JJ, Dwyer RG, **Frierson RL**.  Hypnotics and Driving. *Current Psychiatry*, 2007, 6:38-53

Joshi KG, **Frierson RL**, Gunter TD: Shared Delusional Disorder and Criminal Responsibility: A Review and Case Report of *Folie à Trois, Journal of the American Academy of Psychiatry and the Law*, 2006, 34:511-517

**Frierson RL**: Chapter 12: Legal Issues and Forensic Psychiatry, in *National Medical Series: Psychiatry, 5th edition,* Thornhill, JT ed. Lippincott, Williams and Wilkins: Media, PA, 2006

Markowitz J and **Frierson RL**:  The Prosecution and Civil Commitment of Pregnant Women Who Abuse Drugs:  A Review and Commentary, *American Journal of Forensic Psychiatry*, 2006, 27(2):33-44

Dwyer RG and **Frierson RL**: The Presence of Low IQ and Mental Retardation among Murder Defendants Referred for Pretrial Evaluation, *Journal of Forensic Sciences*, 2006, 51(3): 678-82

Schwartz-Watts DM and **Frierson RL**: Crisis Stabilization in Correctional Settings, in *Clinical Practice in Correctional Medicine, 2nd edition*, M Puisis, Ed. Mobley Elsevier Publishing, Philadelphia, PA, 2006

Sloat LM and **Frierson RL**:  Juror Knowledge and Attitude Regarding Mental Illness Verdicts, *Journal of the American Academy of Psychiatry and the Law*, 2005, 32(2): 208-213

**Frierson RL** and Finkenbine RD:  Psychiatric and Neurological Characteristics of Murder Defendants Referred for Pretrial Evaluation, *Journal of Forensic Sciences* 2004, 49(3): 604-9

**JA 7439**

Young SA, **Frierson RL**, Dwyer RG, and Shah A: Commitment versus Confinement: Therapeutic Passes in the Management of Insanity Acquittees. *Journal of the American Academy of Psychiatry and the Law* 2002, 30 (4): 563-7

**Frierson RL**, Melikian M, and Wadman PG: Principles of Suicide Risk Assessment: How to interview depressed patients and tailor treatment. *Postgraduate Medicine* 2002, 112(3): 65-71.

**Frierson RL**, Shea SJ, and Shea MB: Competence-to-Stand-Trial Evaluations of Geriatric Defendants. *Journal of the American Academy of Psychiatry and the Law* 2002, 30(2): 252-56.

**Frierson RL** and Binkley MW: Prosecution of Illicit Drug use During Pregnancy: *Crystal Ferguson v. City of Charleston. Journal of the American Academy of Psychiatry and the Law* 2001, 29(4): 469-73.

**Frierson RL**: Chapter 12: Legal Issues, in *National Medical Series: Psychiatry, 4th edition,* Scully, JH ed. Lippincott, Williams and Wilkins: Media, PA, March 2001

**Frierson RL,** Schwartz DM, Morgan DM, and Malone TG: Capital versus Noncapital Murderers. *Journal of the American Academy of Psychiatry and the Law* 1998, 26(3): 403-410.

**Frierson RL** and Faulkner LR: Book Review: Evaluation of the Psychiatric Patient: A Primer, by Seymour Halleck, M.D. *Academic Psychiatry* 1992, 16(1):52-53.


## ONGOING RESEARCH PROJECTS

Buckland J and **Frierson RL**: Threats of Violence: South Carolina Psychiatrist's Duty to Protect; a survey of South Carolina Psychiatrists about how they respond to patients who threaten to harm another individual, funded by a $2500.00 grant from the Division of Education, Training and Research, South Carolina Department of Mental Health

**Frierson RL**, Boyd M, and Harper A: Attorney Understanding of Mental Illness and Mental Illness Verdicts: A thirty-two item questionnaire for prosecuting and defense lawyers in South Carolina asking for definitions of common mental illness terms, mental illness verdicts, and overall attitudes about psychiatric patients.

Campbell J and **Frierson RL**: Correctional Officers Knowledge and Attitudes toward Mentally Ill Prisoners. Survey of SCDC correctional officers.

**JA 7440**

## INVITED PRESENTATIONS

**Frierson RL:** Forensic Services: Opportunities for Revenue Generation, Administrators in Academic Psychiatry 2012 Spring Meeting, Charleston SC, April 20, 2012

**Frierson RL**: The Role of Delusion in the Determination of Criminal Responsibility, Psychiatry Grand Rounds, Georgia Health Sciences University, Augusta, GA, March 14, 2012

**Frierson RL:** Lifelong Learning and ABPN Maintenance of Certification, South Carolina Psychiatric Association 2012 Annual Meeting, Charleston, SC, January 29, 2012

Martone C, Yang S, Soliman L, and **Frierson RL:** Psychiatric Characteristics of a Representative Sample of Homicide Defendants, 42nd Annual Meeting of the American Academy of Psychiatry and the Law, Boston, MA, October 29, 2011

**Frierson RL:** Meeting Mental Health Defenses, Mental Retardation in Capital Litigation, Oklahoma District Attorneys Council, Oklahoma City, OK, June 2, 2011

**Frierson RL:** Cross Examination of the Mental Health Expert, Strategic Cross-Examination and Witness Issues in Domestic Violence Cases, Alaska Department of Law, Anchorage, AK, April 18-21, 2011

**Frierson RL**: PTSD and Legal Insanity, Psychiatry Grand Rounds, Wilford Hall Medical Center, Lackland AFB, TX, February 3, 2011

**Frierson RL:** Persons with Mental Illness as Perceived by the Legal System, Psychiatry Grand Rounds, University of Texas Health Sciences Center, San Antonio, TX, February 1, 2011

**Frierson RL**: Unusual Defenses: Anticipating and Overcoming Mental Health Defenses, Forensic Evidence Course, National District Attorneys Association, San Antonio, TX, December 7, 2010

**Frierson RL** and Knight SC: The Insanity Defense in South Carolina, 2010 Judges and Attorneys Substance Abuse and Ethics Seminar, Charleston, SC, December 3, 2010

**Frierson RL:** The Mentally Ill Defendant and Mental Illness Verdicts: Perceptions of the Criminal Bar, 41st Annual Meeting of the American Academy of Psychiatry and the Law, Tucson, AZ, October 22, 2010

**JA 7441**

Pinals D and **Frierson RL:** Preparing for Maintenance of Certification, 41st Annual Meeting of the American Academy of Psychiatry and the Law, Tucson, AZ, October 21, 2010

**Frierson RL:** Mental Retardation and Competence to be Executed. Capital Litigation Seminar, National College of District Attorneys, Columbia, SC, September 27, 2010

**Frierson RL:** Meeting Mental Defenses. Capital Litigation Seminar, National College of District Attorneys, Columbia, SC, September 27, 2010

**Frierson RL:** Thirty-five Years after *Tarasoff*: The Duty to Protect in South Carolina, South Carolina Department of Mental Health Annual Day Long CME Activity, September 17, 2010

**Frierson RL:** Anticipating and Overcoming Mental Health Defenses, Unusual Defenses and Brain Scan Evidence. Forensic Evidence Course, National College of District Attorneys, San Diego CA, December 7, 2009.

Campbell J, **Frierson RL:** Attitudes of Correctional Officers toward the Mentally Ill. 40th Annual Meeting of the American Academy of Psychiatry and the Law, Baltimore, MD, November 1, 2009.

**Frierson RL:** Psychiatric Malpractice: An Overview, Psychiatry Grand Rounds, Medical College of Georgia, Augusta GA, February 19, 2009.

**Frierson RL:** Mental Defenses. Tennessee District Attorneys General Conference Annual Fall Meeting, Knoxville, TN, October 30, 2008.

Buckland JJ, **Frierson RL:** Psychiatrists' Response to The Duty to Protect. 39th Annual Meeting of the American Academy of Psychiatry and the Law, Seattle, WA, October 22, 2008.

**Frierson RL:** Meeting Mental Health Defenses. Career Prosecutor Course, National College of District Attorneys, Charleston, SC, June 4, 2008

**Frierson RL:** The Inclusion of Juvenile Sex Offenders in Sex Offender Registries and Sexual Violent Predator Programs. 2008 Annual Meeting of the American Society of Adolescent Psychiatry, Boston, MA, March 27, 2008

**Frierson RL:** The Mentally Ill Criminal Defendant: What Do Jurors and Lawyers Think? Medical College of Georgia, Augusta GA, November 15, 2007.

**Frierson RL:** The Guilty But Mentally Ill Verdict in South Carolina. 2nd Annual Conference, South Carolina Department of Corrections Division of Mental Health

JA 7442

Services, Columbia, SC, November 2, 2007

**Frierson RL**:  Meeting Mental Defenses.  Contemporary Prosecution Course, National College of District Attorneys, New Orleans, LA, October 29, 2007

Nichita EC and **Frierson RL**: Psychotic vs. Non-psychotic Murder Defendants referred for Pretrial Evaluation, 38th Annual Meeting of the American Academy of Psychiatry and the Law, Miami, FL, October17, 2007.

**Frierson RL**: DSM IV – Lost in Translation.  Experts Course: National College of District Attorneys, San Antonio, TX, May 10, 2007

**Frierson RL**: Malingering – "Professional Lie Detectors".  Experts Course: National College of District Attorneys, San Antonio, TX, May 9, 2007

Dwyer RG,  Saleh F, **Frierson RL**, Grudzinkas A, and Laufersweiler-Dwyer D: Juveniles on Sex Offender Registries: Good or Bad Idea? 44th Annual Meeting of the Academy of Criminal Justice Sciences, Seattle, WA, March 15, 2007

**Frierson RL**: Posttraumatic Stress Disorder and Legal Insanity.  Georgia Psychiatric Physicians Association 2007 Annual Winter Meeting, Atlanta, GA, February 24, 2007

Ferlauto M and **Frierson RL**: Involuntary Commitment and the Probate Judge: A Survey.  37th Annual Meeting of the American Academy of Psychiatry and the Law, Chicago, IL, October 27, 2006

Dwyer RG and **Frierson RL**: Overview of Pharmacological Treatment of Adult Sexual Offending Behaviors, 4th Annual CME Conference: "A Psychiatric Update on Comorbid Conditions", University of South Carolina School of Medicine and Palmetto Health Alliance, Columbia, SC, September 15, 2006

**Frierson RL**:  The Evolution and Evaluation of Legal Insanity. Psychiatry Grand Rounds, East Tennessee State University, Johnson City, TN, August 17, 2006

**Frierson RL**: Criminal Responsibility and the Insanity Defense, Psychiatry Grand Rounds, Medical College of Georgia, Augusta, GA. June 15, 2006

**Frierson RL**: Fundamentals of Risk Assessment in Patients Threatening Violence, Psychiatry Grand Rounds, Wilford Hall Medical Center, Lackland AFB, TX, May 11, 2006

**Frierson RL**: The Evolution and Evaluation of Legal Insanity. Psychiatry Grand Rounds, University of Texas Health Sciences Center San Antonio, San Antonio, TX, May 9, 2006

**JA 7443**

**Frierson RL**: Mental Health Issues in Capital Litigation, Florida Prosecutors Association Capital Litigation Seminar, Gainesville, FL, February 7, 2006

**Frierson RL**: Juror and Lawyer Understanding of Mental Illness Verdicts and their Attitudes Towards Mentally Ill Defendants, Psychiatry Grand Rounds, Palmetto Health Alliance, University of South Carolina School of Medicine, Columbia, SC, January 20, 2006

**Frierson RL**: Forensic Psychiatry: Special Claims Regarding Insanity - A View From the Experts Eyes, National College of District Attorneys, Prosecuting Homicide Cases Program, San Diego, CA, November 2, 2005

**Frierson RL**, Boyd M, Harper A: Attorney Knowledge and Attitudes About Mental Illness: A Survey, 36th Annual Meeting of the American Academy of Psychiatry and the Law, Montreal, Quebec, October 30, 2005

Nichita EC and **Frierson RL**: Evidenced Based Informed Consent with Antipsychotic Treatment, 36th Annual Meeting of the American Academy of Psychiatry and the Law, Montreal, Quebec, October 28, 2005

Joshi K, **Frierson RL,** and Gunter TD: Shared Delusional Disorder and Criminal Responsibility: A Review and Case Report of *Folie à Trois*, 36th Annual Meeting of the American Academy of Psychiatry and the Law, Montreal, Quebec, October 27, 2005

**Frierson RL:** "Criminal Responsibility and Legal Insanity", Forensic Day of Discovery, Medical University of South Carolina, Charleston, SC, May 12, 2005

**Frierson RL:** "The Initial Assessment and Management of Persons Threatening Violence", Annual Spring Meeting of the Iowa Psychiatric Association, Des Moines, IA, April 9, 2005

**Frierson RL**: "Violence Risk Assessment: A Practical Approach", Psychiatry Grand Rounds, Medical College of Georgia, Augusta, GA. February 17, 2005

**Frierson RL**: "Risk Assessment in Patients Threatening Violence", Psychiatry Grand Rounds, University of Iowa, Iowa City, IA. November 23, 2004

Finkenbine RD, Weiss KJ, **Frierson RL**, Miller BA, and Jacoby KA: Workshop: Competency to Confess Assessment and Report Writing, 35th Annual Meeting of the American Academy of Psychiatry and the Law, Phoenix, AZ October 22, 2004

**Frierson RL**: "When a Patient Threatens Violence: The Clinician's Duty", An Update on Suicide and Aggression: Second Annual Day Long CME Conference, South Carolina Department of Mental Health / University of South Carolina

JA 7444

School of Medicine, Columbia, SC. October 15, 2004

**Frierson RL**: "The Duty to Protect and Violence Risk Assessment", Psychiatry Grand Rounds, West Virginia University, Morgantown, WV.  September 8, 2004

Dwyer RG, Bell CC, Williamson JL, and **Frierson RL**: "The Juvenile Justice System: Assessment, Services, and Data Use", 157th Annual Meeting of the American Psychiatric Association, New York, NY.  May 4, 2004

Dwyer RG, Laufersweiler-Dwyer DL, and **Frierson RL**: "Identifying Capital Murder Defendants with Mental Retardation", 41st Annual Meeting of the Academy of Criminal Justice Sciences, Las Vegas, NV. March 11, 2004

Dwyer RG and **Frierson RL**: "Neuropsychiatric Characteristics of Mentally Retarded Murder Defendants", South Carolina Department of Disabilities and Special Needs, Forensic Conference, Columbia, SC. January 22, 2004

Dwyer RG and **Frierson RL**: "Mental Retardation and the Murder Defendant", 34th Annual Meeting of the American Academy of Psychiatry and the Law, San Antonio, TX. October 2003

**Frierson, RL:** "Murder: Diagnosis, Weapon Choice, and Victimology", 34th Annual Meeting of the American Academy of Psychiatry and the Law, San Antonio, TX. October 2003

**Frierson RL:** "Psychiatry and the Death Penalty", Forensic Day of Discovery, Medical University of South Carolina, Charleston, SC. March 2003

**Frierson RL,** Melikian M, and Faubion MW: "Fetal Rights: A Primer for Mental Health Clinicians", Psychiatry Grand Rounds, Palmetto Health Alliance, University of South Carolina School of Medicine, Columbia, SC. January 2003

**Frierson RL,** Faubion MW, Finkenbine RD, and Melikian M: "The Fetus-As-Person: Criminal and Civil Issues", 33rd Annual Meeting of the American Academy of Psychiatry and the Law, Newport Beach, CA. October 2002

Sloat L and **Frierson RL:** "Juror Understanding of Mental Illness Verdicts." 33rd Annual Meeting of the American Academy of Psychiatry and the Law, Newport Beach, CA. October 2002

**Frierson RL:** "The Duty to Protect and the Unborn, Special Topics in Forensic Psychiatry Seminar", Department of Neuropsychiatry and Behavioral Science, University of South Carolina, Columbia, SC. February 20, 2002

**Frierson RL:** "Suicide Risk Assessment and Management in the Depressed Patient." Psychiatry Grand Rounds, Wilford Hall Medical Center, Lackland Air

**JA 7445**

Force Base, San Antonio, TX. February 7, 2002

**Frierson RL:** "Violence Risk Assessments", Dinner Meeting of the combined University of Texas Health Sciences Center/Wilford Hall Medical Center Psychiatry Residents, San Antonio, TX. February 6, 2002

**Frierson RL:** "Psychiatry and the Death Penalty", Psychiatry Grand Rounds, University of Texas Health Sciences Center, San Antonio, TX. February 5, 2002

**Frierson RL** and Shugart M: "Biopsychosocial Characteristics of Juvenile Murderers." 32nd Annual Meeting of the American Academy of Psychiatry and the Law, Boston, MA. October 2001

Schwartz-Watts DM, **Frierson RL**, Clayton B, and Morgan DM: "Comparing Capital Murder Trials." 32nd Annual Meeting of the American Academy of Psychiatry and the Law, Boston, MA. October 2001

**Frierson RL:** "Psychiatry and the Death Penalty", Psychiatry Grand Rounds, Wake Forest University, Winston- Salem, NC. March 16, 2001

**Frierson RL** and Baker T: "Forensic Evaluation of Persons with Mental Illness and Mental Retardation." The Forensic Forum, Columbia, S.C. October 2000

**Frierson RL** and Finkenbine R: Research in Progress: "Psychiatric and Neurological Characteristics of Murderers." 31st Annual Meeting of the American Academy of Psychiatry and the Law. Vancouver, B.C. October 2000

**Frierson RL**, Powell A, Winter E: "Civil and Emergency Commitment in South Carolina", Psychiatry Grand Rounds, Palmetto Health Alliance, University of South Carolina School of Medicine, Columbia, SC. July 2000

**Frierson RL**: "The Duty to Protect: *Tarasoff* Revisited", Psychiatry Grand Rounds, Palmetto Health Alliance, University of South Carolina School of Medicine, Columbia, SC. June 2000

**Frierson RL**: "*Bishop v. DMH*: The Duty to Protect in South Carolina", Forensic Special Topics Seminar, William S. Hall Psychiatric Institute, University of South Carolina School of Medicine, Columbia, SC. March 2000

**Frierson RL**: "Psychiatry and the Death Penalty", Grand Rounds, William S. Hall Psychiatric Institute, University of South Carolina School of Medicine, Columbia, SC. March 2000

**Frierson RL**, Shea SJ, Behrmann TW, and Crawford PM. "Trial Abilities in Geriatric Defendants." 30th Annual Meeting of the American Academy of Psychiatry and the Law. Baltimore, MD. October 1999

**JA 7446**

McKee GR, **Frierson RL**, Shea SJ, and Pickens R: "Multidisciplinary Assessment of Malingering." 29th Annual Meeting of the American Academy of Psychiatry and the Law. New Orleans, LA. October 1998

Barth E, Schwartz DM, and **Frierson RL**: "Harassing Telephone Callers." 28th Annual Meeting of the American Academy of Psychiatry and the Law. Denver, CO. October 1997

**Frierson RL**: "Ethical Issues in Forensic Psychiatry", Psychiatry and the Law Seminar. Columbia, SC. April 1997

**Frierson RL**: "Criminal Forensic Evaluations." The Forensic Forum. Columbia, S.C. October 1996

**Frierson RL**, Schwartz DM, Morgan DM, and Malone TG: "Capital versus Noncapital Murderers." 27th Annual Meeting of the American Academy of Psychiatry and the Law. San Juan, Puerto Rico. October 1996

**Frierson RL**: "Competency to be Executed", Psychiatry and the Law Seminar. Columbia, SC. May 1995

**Frierson RL**: "Physician Assisted Suicide and the Development of Obitiatry", Psychiatry and the Law Seminar. Columbia, SC. March 1994

**Frierson RL**: "Parasomnias in Children", William S. Hall Psychiatric Institute Child Grand Rounds. Columbia, SC. March 1991

**Frierson RL**: "Treatment of Depression in the Elderly", William S. Hall Psychiatric Institute Grand Rounds. Columbia, SC. November 1990

**Frierson RL**: "Depression in the Elderly", Dorn Veterans Administration Medical Center. Columbia, SC. June 1990

## PROFESSIONAL MEMBERSHIP

| | |
|---|---|
| American Medical Association | 2007- |
| American Psychiatric Association | 1988- |
| South Carolina Psychiatric Association | 1988- |
| American Academy of Psychiatry and the Law | 1992- |

## OTHER MEMBERSHIP

| | |
|---|---|
| National Alliance for the Mentally Ill - S.C. Chapter | 2006- |

**MEDICAL LICENSE**        South Carolina #14444

JA 7447