No. 13-9

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, Plaintiff-Appellee,

vs.

BRANDON LEON BASHAM, Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina
Hon. Joseph F. Anderson, Jr., District Judge, Presiding
D.C. No. 4:02-cr-992-JFA-2

## APPELLANT'S SUPPLEMENTAL APPENDIX AND INDEX
## VOLUME 1

JON M. SANDS
Federal Public Defender
MICHAEL L. BURKE
SARAH STONE
Assistant Federal Public Defenders
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2816
Facsimile: (602) 889-3960
michael_burke@fd.org
sarah_stone@fd.org

*Attorneys for*
*Defendant-Appellant Basham*

# United States v. Basham, Case No. 13-9
## Appellant's Supplemental Appendix Table of Contents

ASA 001    April 4, 2003, Motion Hearing Transcript, Disqualification Issue, at page 67

ASA 003    April 8, 2004, Ex Parte Motion Hearing Transcript, at pages 38-39

ASA 006    September 14, 2004, Jury Trial Transcript, Volume II, at pages 217 and 219

ASA 009    September 15, 2004, Jury Trial Transcript, Volume III, at pages 102-04

ASA 013    September 20, 2004, Jury Trial Transcript, Volume V, at pages 94-95

ASA 016    September 22, 2004, Jury Trial Transcript, Volume VII, at page 108

ASA 018    September 23, 2004, Jury Trial Transcript, Volume VIII, at pages 67 and 104

ASA 021    October 18, 2004, Jury Trial Transcript, Volume XIX, at pages 78 and 110

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,          )          CR. NO. 4:02-992
                                   )          COLUMBIA, SC
                                   )          APRIL 4, 2003
                                   )
      VERSUS                       )
                                   )
BRANDON E. BASHAM,                 )
          DEFENDANT.               )
_____    )

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
MOTION HEARING - DISQUALIFICATION ISSUE

APPEARANCES:

FOR THE GOVERNMENT:          STROM THURMOND, JR. USA
                             SCOTT SCHOOLS, AUSA
                             JONATHAN S. GASSER, AUSA
                             UNITED STATES ATTORNEY'S OFFICE
                             1441 MAIN STREET
                             SUITE 500
                             COLUMBIA, SC  29201

FOR THE DEFENDANT
BASHAM:                      CAMERON B. LITTLEJOHN, JR. ESQ.
                             1720 MAIN STREET
                             SUITE 202
                             COLUMBIA, SC  29201-2850

                             WILLIAM H. MONCKTON, VI, ESQ.
                             MONCKTON LAW FIRM
                             1300 PROFESSIONAL DRIVE
                             SUITE 102
                             MYRTLE BEACH, SC  29577

ASA - 001

THAN THE GARDEN-VARIETY CRIMINAL CASE BECAUSE, YOU KNOW, AS I SAID TO PROFESSOR FREEMAN, IF THE DEFENDANT IS FOUND GUILTY, THEN EVERYTHING CHANGES 180 DEGREES ALMOST,  AND THE PENALTY PHASE IS TRIED ENTIRELY DIFFERENT.  AND THEN IF THE DEFENDANT IS GIVEN THE DEATH PENALTY,  THEN EVERYTHING REALLY DOES CHANGE BECAUSE THEN THE DEFENDANT HAS AN INCENTIVE TO SAY THAT EVERYTHING MY LAWYER DID WAS WRONG AND WE ALL KNOW THAT HAPPENS IN DEATH PENALTY CASES.   THE DEFENDANT TURNS ON HIS LAWYERS, AND HE FLYSPECKS,  HE GETS A NEW SET OF LAWYERS, AND THEN HE FLYSPECKS EVERYTHING THAT WAS DONE BY HIS PRIOR SET OF LAWYERS.   AND HERE ONE THING THAT HAS COME TO MY MIND IS, AND THIS IS ALL ASSUMING HE IS CONVICTED, WHICH I, OF COURSE, HAVE NO OPINION ON THAT AT ALL,  THE JURY HAS TO DECIDE THAT,  IF HE IS CONVICTED AND GIVEN THE DEATH PENALTY, THE PRESENT LAWYER STAYED IN THE CASE,  HE WOULD HAVE -- COULD SAY, WELL, MY LAWYERS THAT YOU APPOINTED FOR ME,  I DIDN'T PICK THEM OUT, THE MAGISTRATE SELECTED THEM AND GAVE THEM TO ME, AND THEY WERE MY ONLY CONTACT WITH THE OUTSIDE WORLD.   MY FAMILY IS UP IN KENTUCKY.  I FORMED A BOND WITH THEM AND I THOUGHT THEY WERE LOOKING OUT FOR ME.   THEN I FOUND OUT -- NOW, I FOUND OUT, RATHER, THAT THEY REALLY WEREN'T LOOKING OUT FOR ME. THEY JUST WANTED TO STAY IN THIS CASE,  EARN THESE GOOD FEES TO BE PAID IN A DEATH PENALTY.  THEY MARSHALED THE EVIDENCE AT MY TRIAL ENTIRELY AROUND THEIR CONFLICT SITUATION AND TRIED THE CASE IN SUCH A WAY TO TRY TO KEEP THOSE STATEMENTS FROM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA,          )          Cr. No. 4:02-992
                                   )
                                   )
VERSUS                             )          Columbia, S.C.
                                   )          April 8, 2004
CHADRICK E. FULKS and              )
BRANDEN BASHAM,                    )
                                   )
          Defendants.              )
-------------------------------)


EX PARTE HEARING
AND MOTION HEARING


BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
CHIEF UNITED STATES DISTRICT JUDGE


Appearances:

For the Government:          STROM THURMOND, JR., ESQ.
                             U.S. Attorney for South Carolina
                             SCOTT SCHOOLS, ESQ.
                             First Assistant U.S. Attorney
                             JONATHAN S. GASSER, ESQ.
                             Assistant U.S. Attorney
                             1441 Main Street, Suite 500
                             Columbia, S.C.  29201

For the Defendant            JOHN H. BLUME, ESQ.
Fulks (by telephone):        1247 Sumter Street, Suite 202
                             Columbia, S.C.  29201

                             SHERI LYNN JOHNSON, ESQ.
                             Cornell Law School
                             Myron Taylor Hall
                             Ithaca, NY  14853

(Present in the              WILLIAM F. NETTLES, ESQ.
Courtroom):                  Assistant Federal Public Defender
                             401 Evans Street, Room 240
                             Florence, S.C.  29503


GARY N. SMITH, CM
COLUMBIA, SC

ASA - 003

sticker or something on the other letter that refers to Devon's death so that I can see what it says.

MR. NETTLES: You are talking about not the April 1st letter, but the letter that the government designated that Tina Severance wrote -- that is written to Tina Severance but does not involve the lawyers?

THE COURT: Right. Was it written to Tina or from Tina?

MR. NETTLES: I think it's written to Tina.

THE COURT: That's what I thought. Okay.

MR. NETTLES: I'm sorry.

THE COURT: All right, that's what I would like to do. Mr. Bruton, would you ask them to step back in again, please?

THE DEPUTY MARSHAL: Mr. Swerling too?

THE COURT: Yes, you can bring them all in.

(Government counsel present)

(Defendant Basham, Mr. Swerling, and Mr. Harris present).

THE COURT: All right, let me say, I told my law clerk this morning, this motion for recusal is a sensitive issue, that if this case goes forward and if there is a conviction in a death penalty, some appellate judge's law clerk is going to be flyspecking everything I do eight years from now. And so I want to be very careful and cautious in

proceeding to rule on this motion.

Because of that, I would like to reconvene this hearing next Tuesday at 2 o'clock after I have had a chance to review all the letters that have been designated by the government to be used in this case, so that I can put everything in context and be in a position to rule on it next Tuesday.

Is that -- are the government lawyers available?  I have already checked with the defense lawyers.

MR. SCHOOLS:  Yes, sir.

THE COURT:  All right.  Well, we will see you back here at 2 o'clock Tuesday.  Mr. Nettles is going to get me all of the letters the government has designated of the so-called Tina Severance letters by Monday at 10 o'clock, and we will come back Tuesday and decide this issue one way or the other.

Now, as to -- there are a few other technical procedural matters I would like to take up while you are here. We have the motion -- I think there was a motion by the defendant Fulks to continue the trial or postpone the trial a short time because of the need to test -- do forensic testing on the evidence.  How do we stand on that?

MR. SCHOOLS:  Your Honor, when we last convened and discussed that issue, the government had represented that it would do everything that it could to get the evidence to the defense counsel on the 22nd of March.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,      )      CR. NO. 4:02-992
                               )      COLUMBIA, SC
                               )      SEPTEMBER 14, 2004
                               )
     VERSUS                    )
                               )
BRANDON L. BASHAM,             )
          DEFENDANT.           )
_____)

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL
VOLUME II

APPEARANCES:

FOR THE GOVERNMENT:             SCOTT SCHOOLS, FIRST AUSA
                                JONATHAN S. GASSER, AUSA
                                JOHN DUANE, AUSA
                                UNITED STATES ATTORNEY'S OFFICE
                                1441 MAIN STREET, SUITE 500
                                COLUMBIA, SC  29201

FOR THE DEFENDANT:              JACK SWERLING, ESQ.
                                1720 MAIN STREET
                                SUITE 301
                                COLUMBIA, SC  29201

                                GREG HARRIS, ESQ.
                                1720 MAIN STREET
                                SUITE 301
                                COLUMBIA, SC  29201

COURT REPORTER:                 DEBRA R. JERNIGAN, RPR, CRR
                                UNITED STATES COURT REPORTER
                                901 RICHLAND STREET
                                COLUMBIA, SC 29201

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

ASA - 006

ALL THE WAY FROM HUNTINGTON, WEST VIRGINIA?

A.    I DON'T RECALL EXACTLY THE TIME.   I REALLY DON'T RECALL.

Q.    BUT, OBVIOUSLY, IT WAS BEFORE MIDNIGHT BECAUSE OF THE DATE?

A.    YES.

Q.    DO YOU REMEMBER UNLOADING THE VAN THAT NIGHT TO TAKE YOUR STUFF INTO THE ROOM AT THE LAKE SHORE MOTEL?

A.    YES, AFTER I HAD PAID FOR THE ROOM.

Q.    MS. SEVERANCE, I WANT TO SHOW YOU WHAT IS MARKED GOVERNMENT'S 222-KK.   DO YOU RECOGNIZE THAT CANDY BOX?

A.    YES,  IT WAS FOUND IN MY VAN.

Q.    WHEN IS THE FIRST TIME YOU SAW GOVERNMENT'S EXHIBIT 222-KK?

A.    THAT FIRST DAY IN SOUTH CAROLINA.

Q.    WHEN? WHEN DID YOU SEE IT?

A.    WHEN WE WERE UNLOADING THE VAN IS THE FIRST TIME I HAD SEEN THAT.   THERE WERE SOME M&MS INSIDE THAT BOX.

Q.    MY NEXT QUESTION,  GOVERNMENT'S EXHIBIT 222-MM AND GOVERNMENT'S EXHIBIT 222-RR,  DO YOU RECOGNIZE THESE ITEMS?

A.    YES,  I ATE THE M&MS.

Q.    DO YOU NOTICE ON GOVERNMENT'S EXHIBIT 222-KK A BLUE STRIP DOWN THE BOX?

A.    YES.

Q.    AND THERE IS MULTIPLE TYPES OF CANDY THAT WOULD BE

TIME, DID YOU CONFRONT BOTH MR. BASHAM AND MR. FULKS ABOUT THAT?

A.    YES, I DID.

Q.    FIRST MR. BASHAM.  WHEN YOU CONFRONTED MR. BASHAM ABOUT THE CANDY BOX, WHAT WAS MR. BASHAM'S RESPONSE?

A.    THEY HAD GOTTEN IT FROM A YOUNG GIRL.

Q.    WHO TOLD YOU THEY GOT IT FROM A YOUNG GIRL?

A.    BRANDON BASHAM.

Q.    WHEN YOU CONFRONTED MR. FULKS ABOUT THE CANDY BOX, WHAT WAS MR. FULKS'S RESPONSE?

A.    THEY HAD GOTTEN IT OUT OF ONE OF THE CARS OF THE STUFF THEY HAD STOLEN FROM OUT OF A CAR.

Q.    DID BOTH OF THEM PUT A TIME FRAME AS TO WHEN THEY HAD GOTTEN IT?

A.    THE NIGHT BEFORE, I BELIEVE.

Q.    ALSO, WHEN YOU WERE LEAVING THE HOLLYWOOD MOTEL IN HUNTINGTON, WEST VIRGINIA, THE MORNING OF THE 12TH, THE MORNING AFTER MR. BASHAM AND MR. FULKS CAME BACK TO THE MOTEL ROOM, DID YOU NOTICE SOMETHING ABOUT THE INSIDE OF THE VAN THAT WASN'T THERE WHEN YOU HAD PULLED INTO THE HOLLYWOOD MOTEL?

A.    YES, ANDREA HAD COME IN COMPLAINING THAT THERE WAS MUD, AND I WENT OUT TO LOOK AND THERE WAS MUD.

Q.    WHERE WAS THERE MUD IN THE VAN, MS. SEVERANCE?

A.    THERE WAS SOME ON THE DRIVER'S SIDE ON THE FLOORBOARD.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,    )    CR. NO. 4:02-992
)    COLUMBIA, SC
)    SEPTEMBER 15, 2004
)
    VERSUS    )
)
BRANDON L. BASHAM,    )
    DEFENDANT.    )
_____)

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL
VOLUME III

APPEARANCES:

FOR THE GOVERNMENT:    SCOTT SCHOOLS, FIRST AUSA
JONATHAN S. GASSER, AUSA
JOHN DUANE, AUSA
UNITED STATES ATTORNEY'S OFFICE
1441 MAIN STREET, SUITE 500
COLUMBIA, SC  29201

FOR THE DEFENDANT:    JACK SWERLING, ESQ.
1720 MAIN STREET
SUITE 301
COLUMBIA, SC  29201

GREG HARRIS, ESQ.
1720 MAIN STREET
SUITE 301
COLUMBIA, SC  29201

COURT REPORTER:    DEBRA R. JERNIGAN, RPR, CRR
UNITED STATES COURT REPORTER
901 RICHLAND STREET
COLUMBIA, SC 29201

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

ASA - 009

YOU SAW THE COLOR OF THE MUD ON THE PUDDLE WHERE THE VAN WAS PARKED NEXT TO AND THE COLOR OF THE MUD INSIDE THE VAN?

A.    BOTH THE COLORS DID NOT MATCH.  THE COLOR WAS WAY OFF, EVEN IF IT DID DRY.

Q.    WHAT DO YOU MEAN BY THAT, "WAY OFF"?

A.    ONE COLOR WAS DARKER FROM THE OTHER.  I CAN'T REMEMBER WHICH WAS WHICH, BUT EVEN COMMON SENSE YOU JUST LOOK AT IT WHEN IT DRIES IT IS NOT THE SAME COLOR.

Q.    DID YOU POINT THAT OUT TO MR. FULKS?

A.    NO.

Q.    DID YOU NOTICE SOMETHING ELSE THAT WAS IN THE VAN THAT TUESDAY, NOVEMBER 12TH, ANOTHER ITEM THAT WAS IN THE VAN THAT YOU KNEW HAD NOT BEEN IN THE VAN BEFORE MR. FULKS AND MR. BASHAM WENT AND DID THEIR THING WHEN THEY LEFT THE HOLLYWOOD MOTEL?

A.    YES.  UNDERNEATH THE DRIVER'S SIDE, THERE WAS A CANDY BOX, A FUNDRAISER CANDY BOX.

Q.    MS. RODDY, I SHOW YOU WHAT IS MARKED AS GOVERNMENT'S EXHIBIT 222-KK.  DO YOU RECOGNIZE THAT CANDY BOX?

A.    YES.

Q.    IS THIS THE CANDY BOX THAT YOU SAW IN TINA SEVERANCE'S VAN ON WEDNESDAY MORNING, NOVEMBER 12, 2002?

A.    I CAN'T BE SURE IT IS THE SAME BOX, BUT IT IS A BOX THAT LOOKED LIKE THAT.

Q.    WITH THE BLUE STRIPE?

ASA - 010

A.    YES.

Q.    IN FACT, SUBSEQUENT TO SEEING THIS BOX, WAS THERE STILL CANDY IN THE BOX?

A.    AT THAT POINT IN TIME, THERE WAS SOME, YES.

Q.    DID YOU PARTICIPATE, DID YOU EAT SOME OF THE CANDY?

A.    YES.

Q.    I SHOW YOU WHAT IS MARKED AS GOVERNMENT'S EXHIBIT 222-MM, GOVERNMENT'S EXHIBIT 222-RR, DO YOU RECOGNIZE THESE PACKAGES OF CANDY AS COMING FROM THE BOX?

A.    YES.

Q.    IN FACT, PORTRAYED ON THE SIDE OF THE BOX, ARE THEY NOT?

A.    YES.

Q.    ANY DOUBT IN YOUR MIND, MS. RODDY, THAT THIS BOX OF CANDY WAS NOT IN THE VAN PRIOR TO Y'ALL PULLING IN TO THE HOLLYWOOD MOTEL?

A.    IT WAS NEVER THERE.

Q.    AND HOW DO YOU KNOW THAT?

A.    WHEN YOU SIT IN THE VAN LONG ENOUGH, YOU PRETTY MUCH KNOW WHAT HAS ALREADY BEEN IN THERE.  AND ONCE IT HAS BEEN CLEANED, YOU KNOW WHAT IS THERE AND WHAT IS NOT.

Q.    DID YOU ASK MR. BASHAM WHERE THE BOX OF CANDY CAME FROM?

A.    I DON'T REMEMBER EVER ASKING HIM, BUT HIS REPLY WAS THAT -- HE DID SAY IT WAS TAKEN OFF OF A GIRL THAT WAS SELLING

ASA - 011

IT.

Q.    WHO TOLD YOU IT WAS TAKEN OFF OF A GIRL WHO WAS SELLING IT?

A.    IT WASN'T TOLD JUST DIRECTLY TO MYSELF,  BUT BRANDON SAID IT.

Q.    WHEN YOU LEFT THE HUNTINGTON,  WEST VIRGINIA AREA,  WHO WAS DRIVING?

A.    I CAN'T REMEMBER EXACTLY WHO DID ALL OF THE DRIVING BECAUSE IT WAS SWITCHING OFF BETWEEN CHAD AND TINA.

Q.    BUT ONLY BEING SWITCHED OFF BETWEEN CHAD AND TINA?

A.    YES.

Q.    DID YOU KNOW WHERE YOU WERE GOING?

A.    NO.

Q.    MR. BASHAM, DID HE KNOW WHERE YOU WERE GOING? HE DIDN'T TELL ANYBODY TO GO SOMEWHERE, DID HE?

A.    AS FAR AS MY KNOWLEDGE,  NO.

Q.    WHILE YOU WERE RIDING, DID YOU NOTICE ANOTHER ITEM IN MR. BASHAM'S POSSESSION THAT YOU HAD NOT SEEN PRIOR TO MR. BASHAM AND MR. FULKS LEAVING THE MOTEL ROOM?

A.    AFTER A WHILE,  YES,  I DID.

Q.    AND WHAT WAS THAT?

A.    IT WAS A WOMAN'S HEART-SHAPED RING.

Q.    A WOMAN'S HEART-SHAPED RING?

A.    YES.

Q.    WHERE IN MR. BASHAM'S POSSESSION WAS IT WHEN YOU SAW

ASA - 012

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,    )    CR. NO. 4:02-992
                               )    COLUMBIA, SC
                               )    SEPTEMBER 20, 2004
                               )

    VERSUS                   )

BRANDON L. BASHAM,         )
       DEFENDANT.       )
_____)

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL
VOLUME V

APPEARANCES:

FOR THE GOVERNMENT:         SCOTT SCHOOLS, FIRST AUSA
                           JONATHAN S. GASSER, AUSA
                           JOHN DUANE, AUSA
                           UNITED STATES ATTORNEY'S OFFICE
                           1441 MAIN STREET, SUITE 500
                           COLUMBIA, SC  29201

FOR THE DEFENDANT:          JACK SWERLING, ESQ.
                           1720 MAIN STREET
                           SUITE 301
                           COLUMBIA, SC  29201

                           GREG HARRIS, ESQ.
                           1720 MAIN STREET
                           SUITE 301
                           COLUMBIA, SC  29201

COURT REPORTER:            DEBRA R. JERNIGAN, RPR, CRR
                           UNITED STATES COURT REPORTER
                           901 RICHLAND STREET
                           COLUMBIA, SC 29201

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

ASA - 013

A.    PARANOID.   REAL JUMPY,  YOU KNOW.   AND I ASKED HIM, IS THIS CAR STOLEN? AND HE DIDN'T SAY NOTHING.

Q.    WHEN HE WAS TELLING YOU TO PULL OVER,  WHAT DID YOU THINK HE WAS TELLING YOU TO PULL OVER FOR,  SO THE POLICE CAR COULD GO BY?

A.    YES.

Q.    I JUST WANTED TO MAKE CLEAR, HE WASN'T ASKING YOU TO STOP SO HE COULD TALK TO THE COPS?

A.    NO.

Q.    THAT WEEKEND,  MS. MCGUFFIN,  DID YOU HAPPEN TO OBSERVE A WOMAN'S RING?

A.    YES,  I DID.

Q.    WOULD YOU DESCRIBE HOW YOU OBSERVED THIS RING?

A.    BRANDON HAD WORE A THICK GOLD CHAIN AND THE RING WAS ON THE CHAIN.   BUT AT TIMES HE HAD IT ON HIS PINKY.   THAT IS HOW I NOTICED HE HAD A RING.   IT WAS ON HIS NECKLACE.

Q.    AND WHAT DID HE ATTEMPT TO DO WITH THIS RING?

A.    HE GAVE IT TO ME.

Q.    WHEN DID HE GIVE IT TO YOU?

A.    AFTER WE HAD SLEPT TOGETHER.

Q.    WOULD IT HAVE BEEN THAT FIRST TIME SATURDAY MORNING YOU SLEPT TOGETHER?

A.    YES.

Q.    WHERE WERE YOU WHEN MR. BASHAM GAVE YOU THIS RING?

A.    IN MY BED.

Q.    HOW WOULD YOU DESCRIBE THE RING?

A.    IT WAS A HEART-SHAPED RING WITH LITTLE DIAMONDS ON THE SIDE.

Q.    LET ME SHOW YOU GOVERNMENT'S EXHIBIT 253-F.   DO YOU RECOGNIZE THIS PHOTOGRAPH,  MS. MCGUFFIN?

A.    YES,  I DO.

Q.    WHEN YOU ARE LOOKING AT THE RING IN THIS PARTICULAR PHOTOGRAPH,  HOW IS THAT RELATED TO THE RING THAT MR. BASHAM GAVE YOU?

A.    IT IS HEART-SHAPED AND IT IS SIMILAR.   HAS A WIDE BAND.   HAD A WIDE BAND ON IT.

Q.    DID THE RING THAT MR. BASHAM GAVE YOU APPEAR TO HAVE DIAMONDS ON IT,  AS WELL?

A.    YES.

Q.    WHAT DID YOU DO WITH THIS RING WHEN MR. BASHAM GAVE IT TO YOU?

A.    PUT IT UNDER MY PILLOW BECAUSE IT WOULDN'T FIT ON MY FINGER.

Q.    WHY WAS THAT?

A.    IT WAS SMALLER.

Q.    WHAT SIZE RING DO YOU WEAR?

A.    SEVEN.

Q.    DID YOU ESTIMATE THE SIZE?

A.    IT WAS ABOUT A FIVE.

Q.    WHEN IS -- THE LAST PLACE YOU SAW THIS RING WAS WHERE?

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,     )    CR. NO. 4:02-992
                         )    COLUMBIA, SC
                         )    SEPTEMBER 22, 2004
                         )
      VERSUS                  )
                         )
BRANDON L. BASHAM,         )
        DEFENDANT.       )
_____ )

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL
VOLUME VII

APPEARANCES:

FOR THE GOVERNMENT:           SCOTT SCHOOLS, FIRST AUSA
                             JONATHAN S. GASSER, AUSA
                             JOHN DUANE, AUSA
                             UNITED STATES ATTORNEY'S OFFICE
                             1441 MAIN STREET, SUITE 500
                             COLUMBIA, SC   29201

FOR THE DEFENDANT:            JACK SWERLING, ESQ.
                             1720 MAIN STREET
                             SUITE 301
                             COLUMBIA, SC   29201

                             GREG HARRIS, ESQ.
                             1720 MAIN STREET
                             SUITE 301
                             COLUMBIA, SC   29201

COURT REPORTER:              DEBRA R. JERNIGAN, RPR, CRR
                             UNITED STATES COURT REPORTER
                             901 RICHLAND STREET
                             COLUMBIA, SC 29201

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

ASA - 016

RECOGNIZE WHAT IS PICTURED RIGHT THERE?

A.    YES, SIR.

Q.    WHAT IS THAT?

A.    THAT IS A, I CALL, CANDY BOX.  A BOX THAT HOLDS SMALLER BOXES OF CANDY.

Q.    FUNDRAISER CANDY?

A.    YES, SIR.

Q.    AT THAT POINT, AGENT LEATHERMAN, DID YOU HAVE ANY INFORMATION THAT WAS INDICATED THAT THAT CANDY BOX HAD ANYTHING TO DO WITH THE MISSING PERSON INVESTIGATION IN WEST VIRGINIA?

A.    NO, I DID NOT.

Q.    SHOW YOU GOVERNMENT'S 211.

A.    THAT IS ANOTHER CLOSE-UP PHOTOGRAPH OF THE RIFLES IN THE BACK SEAT AND THE JEWELRY BOXES.

Q.    GOVERNMENT'S 79.

A.    THAT IS THE AREA ON THE FLOOR BEHIND THE DRIVER'S SEAT AND IN FRONT OF THE MIDDLE SEAT.

Q.    NOW, PICTURED AT THE BOTTOM OF GOVERNMENT'S 79 IN THE MIDDLE, WHAT IS THAT?

A.    IT IS A PAIR OF BUSHNELL, I BELIEVE IT IS CALLED, BINOCULARS.

Q.    AND THE MOUNTAIN DEW BOTTLE, WAS THAT OF ANY EVIDENTIARY SIGNIFICANCE TO YOU?

A.    AT THE TIME, YES, SIR, IT WAS.

ASA - 017

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,     )     CR. NO. 4:02-992
                              )     COLUMBIA, SC
                              )     SEPTEMBER 23, 2004
                              )
     VERSUS                   )
                              )
BRANDON L. BASHAM,            )
          DEFENDANT.          )
_____     )

          BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
            CHIEF UNITED STATES DISTRICT COURT JUDGE
                         JURY TRIAL
                        VOLUME VIII

APPEARANCES:
FOR THE GOVERNMENT:              SCOTT SCHOOLS, FIRST AUSA
                                JONATHAN S. GASSER, AUSA
                                JOHN DUANE, AUSA
                                UNITED STATES ATTORNEY'S OFFICE
                                1441 MAIN STREET, SUITE 500
                                COLUMBIA, SC  29201

FOR THE DEFENDANT:              JACK SWERLING, ESQ.
                                1720 MAIN STREET
                                SUITE 301
                                COLUMBIA, SC  29201

                                GREG HARRIS, ESQ.
                                1720 MAIN STREET
                                SUITE 301
                                COLUMBIA, SC  29201

COURT REPORTER:                 DEBRA R. JERNIGAN, RPR, CRR
                                UNITED STATES COURT REPORTER
                                901 RICHLAND STREET
                                COLUMBIA, SC 29201

          STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
                *** *** *** ***

ASA - 018

DUFFLE BAG, THEY WERE SENT UP UNDER THE WEST VIRGINIA CASE NUMBER?

A.   YES,  THAT'S CORRECT.

Q.   AT YOUR REQUEST?

A.   YES,  AT MY REQUEST.

Q.   AND THEN THE ALICE DONOVAN MATTER IN SOUTH CAROLINA WOULD HAVE BEEN ASSIGNED A DIFFERENT NUMBER WITH A CO DESIGNATION TO REFLECT THAT IT WAS HANDLED BY THE COLUMBIA FIELD OFFICE?

A.   YES,  THAT'S CORRECT.

Q.   SOME ITEMS WERE SENT TO THE LAB UNDER THAT NUMBER?

A.   YES.

Q.   AGENT HARPER,  SUBSEQUENT TO YOUR DEALING WITH THESE ITEMS WE HAVE DISCUSSED, DID YOU BECOME AWARE OF THE SIGNIFICANCE OF THE CANDY BOX THAT SAMANTHA BURNS MAY HAVE HAD?

A.   AT SOME POINT, MY SUPERVISOR, JOE CICCARELLI, TOLD ME THAT, AT THE TIME OF HER DISAPPEARANCE, SAMANTHA HAD BEEN SELLING CANDY AS A FUNDRAISER AT THE COLLEGE, AND THAT WAS THE FIRST TIME I BECAME AWARE OF IT.

Q.   WHAT DID YOU DO AFTER LEARNING THAT INFORMATION?

A.   WELL,  WHEN I HAD JOE LEATHERMAN SEND THE ITEMS OF EVIDENCE, HE ALSO SENT SEVERAL ROLLS OF FILM THAT WERE UNDEVELOPED, AND THE STATE POLICE HAD SINCE SENT THOSE TO THEIR OWN PHOTO LAB AND HAD THEM DEVELOPED.  SO,  I WENT TO

A.    I THINK WE SEARCHED IT MORE THAN ONCE.

Q.    SHE AGREED TO HAVE HER GRANDMOTHER'S PHONE TAPPED, I BELIEVE?

A.    YES.

Q.    YOU RECALL, GOING BACK EARLY ON IN MY QUESTIONING, WHEN I ASKED YOU TO EXPLAIN TO THE JURY THE MISSING PERSON'S PAMPHLET THAT YOU HAD KANDI BURNS FILL OUT?

A.    YES, SIR.

Q.    IS IT ALSO STANDARD PROTOCOL TO ASK OF FAMILY MEMBERS WHETHER OR NOT THE VICTIM WAS LAST SEEN WITH ANY TYPE OF JEWELRY?

A.    THAT'S CORRECT.

Q.    DID YOU DO THAT, IN THIS CASE?

A.    YES, WE DID.

Q.    DID YOU DETERMINE SAMANTHA BURNS HAD A SPECIFIC TYPE OF OR DESIGN OF A DIAMOND RING?

A.    SHE HAD A HEART-SHAPED DIAMOND RING ABOUT SIZE FIVE.

Q.    DID YOU THOROUGHLY SEARCH BETH MCGUFFIN'S HOME TRYING TO FIND THAT RING?

A.    YES, WE DID.

Q.    THE RESULTS WERE WHAT?

A.    NEGATIVE.

Q.    LATER ON OR ON INTO THAT WEEK TUESDAY, NOVEMBER 19TH, AND WEDNESDAY, NOVEMBER 20TH, WERE YOU RECEIVING UPDATES FROM THE FBI WITH REGARDS TO THEIR INTERVIEWS THAT THEY WERE

ASA - 020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,      )      CR. NO. 4:02-992
                               )      COLUMBIA, SC
                               )      OCTOBER 18, 2004
                               )
      VERSUS                   )
                               )
BRANDON L. BASHAM,             )
         DEFENDANT.            )
_____)

BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL XIX


APPEARANCES:

FOR THE GOVERNMENT:            SCOTT SCHOOLS, FIRST AUSA
                              JONATHAN S. GASSER, AUSA
                              JOHN DUANE, AUSA
                              UNITED STATES ATTORNEY'S OFFICE
                              1441 MAIN STREET, SUITE 500
                              COLUMBIA, SC  29201

FOR THE DEFENDANT:            JACK SWERLING, ESQ.
                              1720 MAIN STREET
                              SUITE 301
                              COLUMBIA, SC  29201

                              GREG HARRIS, ESQ.
                              1720 MAIN STREET
                              SUITE 301
                              COLUMBIA, SC  29201


COURT REPORTER:               DEBRA R. JERNIGAN, RPR, CRR
                              UNITED STATES COURT REPORTER
                              901 RICHLAND STREET
                              COLUMBIA, SC 29201




STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

ASA - 021

MULLINS HIRED A RETIRED FBI AGENT.  HE SENT THE JURY -- HE CALLED THE JURY POSING TO BE SOMEWHAT OF TAKING A PUBLIC OPINION POLL OF THE JURY THAT HAD BEEN IMPANELED.  WHEN THE DEFENSE LAWYERS FOUND OUT ABOUT IT, THEY SELF-REPORTED IT. AND THEN JUDGE DUFFY DISCHARGED THAT JURY AND MADE THEM START OVER.   I MEAN,  SELF-REPORTING, IT IS COMMENDABLE.  THAT DOESN'T NECESSARILY MAKE THE PROBLEM GO AWAY IS WHAT I AM SAYING.

MR. GASSER:  I UNDERSTAND THAT.

THE COURT:   LET ME JUST SAY.   I AM CERTAIN WHATEVER WAS SAID WAS SAID TOTALLY INNOCENT WITHOUT ANY INTENT WHATSOEVER OF INFLUENCING THE JURY.   BUT I AM JUST SCARED ON APPEAL THAT SOME APPELLATE JUDGE MIGHT SAY THIS WAS INAPPROPRIATE CONTACT BETWEEN FAMILY MEMBER AND A JUROR.   AND THEN THE DISTANCE THAT TAKES PLACE BETWEEN TRIAL AND COURT OF APPEALS,  IT MIGHT LOOK A LOT WORSE THAN IT IS, COULD JEOPARDIZE THIS TRIAL.   I READ SOMEWHERE WHERE 90 PERCENT OF MOST CRIMINAL CASES ARE AFFIRMED ON APPEAL.   AN AWFUL LOT OF DEATH PENALTIES COME BACK FOR A SECOND TRIAL BECAUSE OF SOMETHING THAT HAPPENED.   APPELLATE COURTS ARE SO CAREFUL TO PROTECT THE RIGHTS OF THE DEFENDANTS, EVEN IF IT MEANS AN EXPENSIVE TRIAL HAS TO BE DONE OVER.   THAT IS MY CONCERN.   I DON'T MEAN TO CAST ANY ASPERSIONS ON ANYONE.

MR. GASSER:  YOUR HONOR,  I THINK YOU HAVE TO TAKE EVERY INCIDENT ON ITS OWN FACTS.   AND THIS IS A SITUATION,

ASA - 022

HAVE DEVELOPED, THE ABILITY OF VICTIMS TO PARTICIPATE IN THIS PROCESS IS CERTAINLY ONE THAT HAS BEEN ONE THAT THE COURTS AND THE CONGRESS HAVE INCREASINGLY SEEMED TO TRY TO PROTECT. SO, GIVEN ALL OF THOSE FACTORS, JUDGE, WE THINK THAT, FIRST OF ALL, UNDER REMMER AND U.S. VERSUS CHEEK, THE FOURTH CIRCUIT CASE, THE GOVERNMENT HAS MET ITS BURDEN THAT THERE IS NO LIKELIHOOD OF PREJUDICE.

SECONDLY, IF THERE IS -- IF THE COURT IS DISSATISFIED WITH THAT, THEN THE REMEDY THAT BEST ACCOMMODATES EVERYBODY'S INTEREST IS THE EXCLUSION OF MR. PRICE. AND IF THE DEFENDANT IS GIVEN THAT REMEDY, THAT ACCOMMODATES EVERYBODY'S INTEREST. AT LEAST ON ITS FACE, IT IS SOMETHING THAT THEY WOULD RATHER NOT HAVE THE COURT IMPOSE, AND THEY CERTAINLY HAVE THE RIGHT TO WITHDRAW THAT OBJECTION.

THE COURT: ALL RIGHT. WELL, AFTER A LOT OF PAINSTAKING SEARCH AND SOUL-SEARCHING OVER THE LUNCH BREAK, I WILL GRANT THE MOTION AND EXCLUDE THE TESTIMONY OF MS. JENNIFER WARNER, THE DAUGHTER OF THE MURDER VICTIM IN THIS CASE. IT IS NOT SOMETHING I LIKE DOING, BUT JUDGES OCCASIONALLY HAVE TO MAKE RULINGS THAT THEY PERSONALLY DO NOT LIKE. I AM JUST CONCERNED THAT THERE IS A POSSIBILITY THAT THE COURT OF APPEALS WILL DETERMINE THAT THIS CONTACT THAT OCCURRED IN THE ELEVATOR BETWEEN MS. WARNER AND ONE OF THE REGULAR JURORS MIGHT HAVE TAINTED THE JUROR TO AN EXTENT TO CREATE AN UNFAIR TRIAL AND UNDUE PROCESS VIOLATION. I